IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LINDA MICHAEL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-10-1064-F |
| | ) |
| MILLICENT NEWTON-EMBRY | ) |
| WARDEN, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION ON THE**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Ms. Linda Michael is a state inmate suing under 42 U.S.C. § 1983 and state law. The claims involve:

- invalidity of a disciplinary conviction,

- invalidity of a state statute governing sanctions in prisoner cases, and

- failure to supply protection in violation of the Eighth Amendment.

The Plaintiff seeks summary judgment on these claims.[1] Plaintiff's Motion for Summary Judgment at ECF pp. 1, 25. Defendants Millicent Newton-Embry, Angela Johnson, Richard

---

[1] In her motion for summary judgment, Ms. Michael adds claims involving double jeopardy in disciplinary proceedings and due process violations in an adjustment review. *See* Plaintiffs [sic] Motion for Summary Judgement Fed[.] R. Civ. P. 56 at ECF pp. 14-15 (Mar. 2, 2011) ("Plaintiff's Motion for Summary Judgment"). Ms. Michael also seeks new forms of injunctive relief, requesting that the Court: (1) order the prosecution of two "inmate assailants," (2) mandate staffing and inmate screening at the correctional center, and (3) require maintenance of proper institutional records for inmate grievances and appeals. Plaintiff's Motion for Summary Judgment at ECF p. 24; *see* Plaintiffs [sic] Reply to Defendants [sic] Response to Plaintiffs [sic] Motion for Summary Judgement and Brief in Support at ECF pp. 3, 14-15 (Apr. 23, 2011) ("Plaintiff's Reply"). These claims and proposed remedies did not appear in the second amended complaint.

Arnold, John Carothers, Debbie Morton, Ola Onajobi, Thomas Uzuegbunem, Sally Taylor, Dennis Griffith, Kathy Conrad, Karen Johnson, and the State of Oklahoma/Office of the Attorney General object. Defendants' Response to Plaintiff's Motion for Summary Judgment and Brief in Support (Mar. 23, 2011) ("Defendants' Response").[2]

For some of the claims, the summary judgment motion should be dismissed on grounds of mootness. For the other claims, the motion should be denied.

### STANDARD FOR SUMMARY JUDGMENT

"A claimant is entitled to summary judgment only when no genuine issue of material fact exists, the papers on the motion demonstrate the right to relief, and every one of the defenses asserted legally are insufficient." 10B Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure: Civil* § 2734 at 256 (3d ed. 1998) (footnote omitted). Thus, Ms. Michael bears a "stringent" burden to "establish, as a matter of law, all essential elements of the issue before the [Defendants] can be obligated to bring forward any specific facts alleged to rebut the movant's case." *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008) (citation omitted). The Court must deny the plaintiff's summary judgment motion whenever any of the defenses would present "significant fact issues." 10B Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure: Civil* § 2734 at 256 (3d ed. 1998) (footnote omitted).

---

[2]  Ms. Michael states that she had filed her motion for summary judgment on February 25, 2011, and that the Defendants' response on March 23, 2011, was late. Plaintiff's Reply at ECF p. 1. But the Plaintiff's motion was file-stamped on March 2, 2011, and the Defendants' response 21 days later was timely. *See* LCvR 7.1(g).

The Court has dismissed without prejudice all claims against Mr. Mike Murry. Amended Order (June 8, 2011). For all of the other defendants, the undersigned has recommended dismissal of: (1) the personal- and official-capacity claims for denial of equal protection, and (2) the official-capacity claims for damages. Report and Recommendation on the Defendants' Motion to Dismiss at pp. 4-5, 8-10 (June 15, 2011). In addition, the undersigned has suggested dismissal of the claim against the State of Oklahoma/Oklahoma Attorney General regarding the invalidity of Okla. Stat. tit. 57 § 566.3. *Id.* at pp. 3-4. For these claims, the suggested dismissals would moot the Plaintiff's summary judgment motion.[3]

DEPRIVATION OF DUE PROCESS THROUGH A DISCIPLINARY CONVICTION

Ms. Michael seeks summary judgment on the due process claim. Plaintiff's Motion for Summary Judgment at ECF pp. 2-7; *see* Amended Complaint, Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 at ECF pp. 5-7 (Jan. 5, 2011) ("Second Amended Complaint"). The Defendants argue that the Plaintiff is not entitled to judgment as a matter of law, in part because her disciplinary conviction did not require due process. The Defendants are correct, and the Court should overrule Ms. Michael's motion for summary judgment on this claim.

---

[3] *See Royhouse v. Miller*, 2008 WL 2704611, Westlaw op. at 1, 4 & n.7 (W.D. Okla. June 30, 2008) (unpublished op.) (holding that the defendants' entitlement to summary judgment would moot the plaintiff's dispositive motion).

3

"The Fourteenth Amendment prohibits states from depriving citizens of liberty without due process of law." *Wilson v. Jones*, 430 F.3d 1113, 1117 (10th Cir. 2005). Thus, a prisoner is entitled to due process before she is subjected to:

- conditions that "'impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life'" or

- disciplinary actions that "'inevitably affect the duration of [her] sentence.'"

*Id.* (citations omitted).

Prison officials found Ms. Michael guilty of "menacing" and sanctioned her with:

- revocation of 365 credits,

- restriction to Level 1 for 90 days, and

- disciplinary segregation for 30 days.

Second Amended Complaint at ECF p. 7; Defendants' Response, Exh. 11 at p. 1.

The threshold question is whether Ms. Michael has established an entitlement, as a matter of law, to due process before the imposition of these sanctions. The Court should answer in the negative.

The parties have stipulated that Ms. Michael is serving a life sentence imposed by a Florida state court.[4] Under Florida law, an inmate serving a life sentence is ineligible for

---

[4] In the second amended complaint, Ms. Michael alleged discrimination "against lifers." Second Amended Complaint at ECF p. 6. The Court held a telephonic hearing to clarify whether the Plaintiff had intended to allege that she was serving a life sentence. She responded in the affirmative and the parties stipulated that: (1) Ms. Michael is serving a life sentence; and (2) the Court can consider this stipulated fact in connection with the Plaintiff's summary judgment motion. *See* Enter Order (May 12, 2011); *see also* Defendants' Response, Exh. 3 at pp. 1-2, Exh. 4 at p. 4.

"gain-time" credits towards early release.[5] Consequently, the deduction of credits or reclassification would not "inevitably affect the duration of [her] sentence." *See supra* p. 4.[6]

A similar issue arose in *Marshall v. Morton*, 2011 WL 1549516 (10th Cir. Apr. 26, 2011) (unpublished op.). There authorities found the plaintiff guilty of misconduct and placed him in segregation for 30 days, revoked 365 days of earned credits, and reduced his classification to Level 1 for 90 days. *See Marshall v. Morton*, 2011 WL 1549516, Westlaw op. at 2 (10th Cir. Apr. 26, 2011) (unpublished op.). The plaintiff sued under Section 1983, alleging a lack of due process. *See id.*, 2011 WL 1549516, Westlaw op. at 2. The federal district court dismissed the claim on grounds that the plaintiff was subject to the "85% rule" and was ineligible for credits. Because the plaintiff had no right to earn credits, his disciplinary conviction did not implicate a protected liberty interest. *See id.*, 2011 WL 1549516, Westlaw op. at 3. The Tenth Circuit Court of Appeals agreed that revocation of

---

[5] Florida law provides two statutory limitations bearing on the availability of "gain-time" credits for persons serving life sentences. First, these credits are only available for persons serving sentences for a specified number of years. *See* Fla. Stat. tit. XLVII § 944.275(2)(a) (reserving "gain-time" credits to sentences of "a term of years"). Second, the statute for "gain-time" credits provides that "[s]tate prisoners sentenced to life imprisonment shall be incarcerated for the rest of their natural lives, unless granted pardon or clemency." *See* Fla. Stat. tit. XLVII § 944.275(4)(b)(3). Based on these provisions, Florida courts have held that "gain-time" credits are unavailable for individuals serving life sentences. *See Clines v. Florida*, 912 So. 2d 550, 559 n.5 (Fla. 2005) (stating that the Florida statute, Section 944.275(b)(3), "prohibits the use of gain-time to reduce life sentences"); *Conionilli v. Florida*, 58 So. 2d 380, 381 n.1 (Fla. App. 2011) (noting that a person serving a life sentence in Florida was not eligible for "gain-time" credits because the pertinent statute applied only to sentences that were for a term of years).

[6] Ms. Michael admits that invalidation of her disciplinary conviction "would not result in an immediate or speedier release." Petitioner's Reply at ECF p. 7.

credits or reclassification would not implicate a protected liberty interest. *Id.*, 2011 WL 1549516, Westlaw op. at 4.

*Marshall* is persuasive and would prevent summary judgment for Ms. Michael on the due process claim. The removal of credits and reclassification[7] did not affect a protected liberty interest, and the Plaintiff cannot establish as a matter of law that she was entitled to due process.

The same is true with respect to placement in segregation for 30 days. To implicate a protected liberty interest, the segregation must "'impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *See supra* p. 4. Ms. Michael has not described the conditions of her segregation or provided any evidence concerning its typicality or the relative hardship as compared to the conditions in the general population. Consequently, the Plaintiff has not shown as a matter of law that a liberty interest had been implicated by placement in segregation for 30 days.[8]

Ms. Michael bears the burden to demonstrate as a matter of law that her disciplinary conviction had implicated a protected liberty interest. Because she has not carried this

---

[7] Ms. Michael urges a liberty interest because "gain-time" credits can be considered on an application for a sentence-commutation. Plaintiff's Reply at ECF p. 3. But a similar argument was raised and rejected in *Marshall*. *See Marshall v. Morton*, 2011 WL 1549516, Westlaw op. at 6 (10th Cir. Apr. 26, 2011) (unpublished op.) (holding that although the revocation of earned credits could negatively impact the plaintiff's parole considerations, this possibility was "'too attenuated to invoke the procedural guarantees of the Due Process Clause'" (citation omitted)).

[8] *See, e.g., Gaines v. Stenseng*, 292 F.3d 1222, 1225-26 (10th Cir. 2002) (holding that a determination of whether segregation implicated a protected liberty interest could only be determined upon examination of the conditions of confinement).

burden, the Court cannot grant her summary judgment on the claim involving a due process violation in the disciplinary proceedings.

## VIOLATION OF THE FIRST AMENDMENT

The disciplinary conviction was based on circulation of a letter sent to an outside party, and Ms. Michael claims that the punishment violated her right to free speech. Second Amended Complaint at ECF pp. 5-7. The Court should reject Ms. Michael's motion for summary judgment on this claim.

An inmate's interest in "uncensored communication by letter" is "grounded . . . in the First Amendment." *Procunier v. Martinez*, 416 U.S. 396, 418 (1974), *overruled on other grounds*, *Thornburgh v. Abbott*, 490 U.S. 401 (1989). Thus, "[c]orrespondence between a prisoner and an outsider implicates the guarantee of freedom of speech . . . ." *Treff v. Galetka*, 74 F.3d 191, 194 (10th Cir. 1996). However, prison officials may interfere with a prisoner's speech if there is a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." *Turner v. Safley*, 482 U.S. 78, 89 (1987) (citation omitted). For example, if Ms. Michael's letter was threatening or harassing, prison officials would have had a legitimate penological interest in punishing the Plaintiff for unprotected speech.[9]

---

[9]  *See Young-Bey v. Swanson*, 3 Fed. Appx. 929, 931 (10th Cir. Feb. 23, 2001) (unpublished op.) (upholding dismissal of a prisoner's complaint involving sanctions for communication with an outside party when prison officials considered the communication as harassment, reasoning that "'[r]eduction of criminal activity and harassment qualifies as a legitimate governmental objective'" (citation omitted)).

A reasonable fact-finder could legitimately regard Ms. Michael's letter as threatening. The letter reads:

> Re: Prison Ministry Volunteer Program MBCC Mentor Jackie Taylor
>
> Dear Pastor Paul Cunningham,
>
> I would like to introduce myself to you. My name is Linda Michael, an inmate at MBCC.
>
> On Wednesday evening Jackie mentors our faith group. Our study guide is 'Lies Women Believe' by Nancy Demoss [sic].
>
> Several weeks ago Mr. John Carothers, Program Provider stated to me "Jackie called him in regards to my bad conduct," etc. etc. . . . No action was taken, as Mr. Carothers has been my Provider for 3 years. Also, I have a 22 year outstanding institutional history, a degree in theology, a graduate from Rhema Bible College.
>
> If Jackie has a personal problem with me, than as a Christian, spoke to me about what troubles her.
>
> In prison it is dangerous for her to go behind an inmates back to a staff member with lies.[(1)]
>
> For her safety, in the future this behavior could get her hurt. Not everyone is like me. And would just let it go to pen and paper. Back stabbing is a dangerous game.
>
> Therefore, I strongly recommend that you remove Jackie from prison ministry. It's not a calling for everyone. And Jackie has no heart for it.
>
>         Respectfully
>         Linda Michael
>         . . . .
>
> fn (1) Exodus 23 V 1
>
> cc. Ms. C. Conrad Faith & Character Facilitator MBCC

8

Ms. Michael states that after being harassed by Jackie Taylor, she wrote the letter to "ask[] for help" from "Pastor Paul Cunningham." Second Amended Complaint at ECF p. 5. With that interpretation, prison officials might have violated the Plaintiff's right to freedom of speech when they sanctioned her for writing the letter. *See supra* p. 7. But, a reasonable fact-finder could also interpret the Plaintiff's words as thinly veiled threats toward Ms. Taylor. With that interpretation, prison officials would have had a legitimate penological interest in punishing Ms. Michael for her correspondence. *See supra* note 9.

Under these circumstances, Ms. Michael has failed to establish a violation of the First Amendment right as a matter of law, and she is not entitled to summary judgment on this claim.

## INFLICTION OF PSYCHOLOGICAL INJURY

The Plaintiff also seeks summary judgment on grounds that the disciplinary penalty had resulted in psychological injury so intense that it involved cruel and unusual punishment. Plaintiff's Motion for Summary Judgment at ECF pp. 10-11; *see* Second Amended Complaint at ECF p. 7. However, Ms. Michael has not shown entitlement to judgment as a matter of law on this claim.

To prevail on this claim, Ms. Michael must show that the prison officials had known of, and disregarded, an excessive risk to her mental health. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Ms. Michael has not demonstrated as a matter of law that the Defendants had the culpable state of mind. As noted above, a reasonable juror could interpret the Plaintiff's letter as an innocent request for help; however, one could also regard Ms. Michael's letter as threatening. *See supra* p. 9 & note 9. In light of the dual possibilities, Ms. Michael cannot show as a matter of law that officials had prosecuted the charge with a sufficiently culpable state of mind under the Eighth Amendment. Consequently, the Plaintiff is not entitled to judgment as a matter of law on this claim.

## FAILURE TO SUPPLY PROTECTION

Ms. Michael has two failure-to-protect claims. In the first, the Plaintiff avers that Defendants Carothers and Conrad had failed to protect her from the harassment of a prison volunteer. Second Amended Complaint at ECF p. 5. In the second, she accuses Defendants Taylor, Uzuegbunem, and Onajobi of a failure to protect her from a physical assault. *Id.* at ECF pp. 9-10. On the first claim, a genuine dispute of material fact exists on the Defendants' exhaustion defense. On the second claim, the merits turn on resolution of disputed facts. Consequently, the Court should deny Ms. Michael's motion for summary judgment on both claims.

I. Protection from a Volunteer's Harassment: Exhaustion of Administrative Remedies

Federal law provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail,

prison, or other correctional facility until such administrative remedies as are available are exhausted." Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). This law "requires proper exhaustion" of the prison's administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 92 (2006).

The Defendants rely on evidence that Ms. Michael is required to complete a "formal two stage" process, which includes the filing of a grievance with the "facility head, then with an appeal of that decision to the office (Administrative Review Authority)." Defendants' Response, Exh. 7.[10] Defendant Morton states that Ms. Michael had filed only one grievance appeal, "ARA 11-991." *Id.* That grievance concerned Defendants Taylor, Uzuegbunem, and Onajobi's alleged failure to protect. *See id.*, Exh. 8 at pp. 2-3; *see also* Second Amended Complaint, Exh. 33 at pp. 1-2.

Ms. Michael does not present any evidence of a grievance concerning Defendants Carothers and Conrad's failure to provide protection from the harassment of a prison volunteer, and that issue is not present in the grievance both sides have provided. *See supra* p. 11. Thus, Ms. Michael cannot show, as a matter of law, that she has exhausted administrative remedies on this claim.[11]

---

[10] The Defendants also rely on "OP-090124," which is presumably the prison policy governing exhaustion of administrative remedies. Defendants' Response at ECF pp. 13, 20. However, the Defendants did not submit a copy of "OP-090124" with their response.

[11] *See* 10B Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure: Civil* § 2734 at 256 (3d ed. 1998) (footnote omitted) ("Since a single valid defense may defeat recovery, . . . claimant's motion for summary judgment should be denied when any defense presents significant fact issues that should be tried."); *see also Conoco Inc. v. J.M. Huber Corp.*, 148 F. Supp. 2d 1157, 1168 (D. Kan. 2001) ("There can be little doubt [the plaintiff's] motion for

II. Protection from an Inmate Assault:  Evidence Involving Deliberate Indifference

A genuine issue of material fact also exists on the Plaintiff's second theory, which involves a failure by Defendants Taylor, Uzuegbunem, and Onajobi to supply protection against an inmate assault.

This claim involves two elements: (1) incarceration under conditions posing a substantial risk of serious harm, and (2) the defendants' deliberate indifference to the inmate's health or safety. *See Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996).

Ms. Sallie Taylor and Mr. Ola Onajobi stated under oath that they had asked Ms. Michael if she was in fear for her life and that she answered in the negative. Defendants' Response, Exhs. 14-15. Ms. Taylor added in her sworn statement that others had offered protective custody to Ms. Michael if she felt threatened and that she declined the offer. *Id*., Exh. 15.

---

summary judgment must be denied if one of [the defendant's] affirmative defenses bars relief or if material facts (or inferences from those facts) exist as to the validity of an affirmative defense." (citations omitted)), *aff'd*, 289 F.3d 819 (10th Cir. 2002).

From these statements, one can reasonably infer that the Defendants had not manifested deliberate indifference to Ms. Michael's safety.[12] Thus, the Plaintiff is not entitled to summary judgment on this claim.

## RECOMMENDED RULING

The Court should overrule the Plaintiff's motion for summary judgment.

## NOTICE OF THE RIGHT TO OBJECT

The parties can object to this report and recommendation. To object, the party must file an objection with the Clerk of this Court by July 5, 2011. *See* Fed. R. Civ. P. 6(a)(1)(C), 6(a)(6)(A), 6(d), 72(b)(2); 28 U.S.C. § 636(b)(1) (2009 supp.). The failure to timely object would foreclose appellate review of the suggested ruling.[13]

## STATUS OF THE REFERRAL

The present report does not discharge the referral.

Entered this 16th day of June, 2011.

_____
Robert E. Bacharach
United States Magistrate Judge

---

[12] The Plaintiff criticizes the affidavits of Ms. Taylor and Mr. Onajobi as "self-serving." Plaintiff's Reply at ECF pp. 4, 10. But affidavits may be used to defeat summary judgment even when they are self-serving. *See Wardell v. Duncan*, 470 F.3d 954, 964 (10th Cir. 2006) (rejecting an objection to an affidavit as "'self-serving'"); *see also Lavery v. R-K Leasing*, 19 F.3d 33, 1994 WL 55567, Westlaw op. at 3 (10th Cir. Feb. 24, 1994) (unpublished op.) (stating that affidavits may be acceptable "for summary judgment purposes" even when they are self-serving).

[13] *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *see also Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").